Good morning, Your Honors. My name is Lisa Cantor from Cantor & Cantor, and I am honored to be here this morning to represent the appellants, Karn and Laura Jacobs. Last August, an en banc panel of this Court rocked the ERISA world when it issued the decision in Abatey v. Alta Health. And since that time... Abatey. Okay, Abatey. Right. I'll try to remember that. No, I knew a fellow named Abatey. He was a chief judge of Guam. That's the way he pronounced his name, Abatey. Well, since Abatey... Yeah, it's okay. Numerous cases which were decided under the old standard of review have been remanded by this panel back down to the district courts. The theme being that the district... I'd like you to speak up a little bit more. Okay, I'd be happy to. The theme being that the district court should look at the new standard in the first instance because it is a different standard than under the old Atwood standard. And certainly a remand in this case would be much preferable to an affirmance, but my goal this morning is to try to convince you that under Abatey, this case should be subject to a de novo standard of review. And the reason for that is that assuming an erisa fiduciary has the discretion to determine plan eligibility, it has to actually have exercised that discretion to have the abuse of discretion standard apply. Here, there are two reasons why Kaiser did not exercise its discretion and therefore the de novo standard should apply. The first is that Kaiser itself never made a decision on the request for referral outside the Kaiser system. The decisions were made by other entities. The second is that Kaiser two years prior to the date the referral was requested had established a policy that the particular type of treatment Laura Jacobs needed would not be provided in the Kaiser system and would not be paid for outside of the Kaiser system. So let me start with the first, my first point. If you assume that there is discretionary language in a plan document here, an issue that is in debate between the parties, the document says that Kaiser health plan has the discretion to determine benefit eligibility. Here, when Laura Jacobs wanted inpatient eating disorder treatment, the first level of review was done by a social worker. The plan says that a planned physician is supposed to consider that request. The social worker then referred her decision to deny the referral to an entity called the medical review committee. District court took evidence outside the administrative record and decided that this entity was an issue. And that review committee decided against referral. And then it went up to the regional appeals committee who also decided referral. The problem here is that even if you look at both plan documents, both documents as planned documents, there is no authority to delegate discretion to any of these entities. Well, what you're advocating, Laura, it really bothers me. I mean, there's some other areas. But what you're saying is if these health plans use independent agencies, they're going to lose their right of discretion to act on the claims. And the problem is then it goes back to the company itself or the plan itself, which has a built-in, something of a built-in bias. And for me, I don't know where I want to go that way. I think independent evaluation is good for these plans. And providing the independents are qualified and able. And I just don't care much for that approach because of what it would mean to many of these plans. Because I think if Kaiser has independent agencies that pass on these things, that's a good thing. Now, that doesn't mean that they're insulated because there's some other things. But weren't all these entities that passed on it, weren't they all part of the Kaiser family? They were. They were part of the Kaiser family. But my point is this. Yes, I agree that it's good to have independent review. And if the plan allows that the entity which does the review, that independent entity, has discretion, that's fine under Ninth Circuit authority. But if the plan doesn't allow that entity delegate, excuse me, if the plan doesn't say, Kaiser, you have discretion. And if you decide that you want to delegate your discretion to another entity, such as the Medical Center Review Group or the Regional Appeals Committee, then you may do it. But if the plan doesn't give the authority to delegate, it is not an effective delegation of discretion under Ninth Circuit authority. Doesn't mean Kaiser can't consult them. There's nothing wrong with consulting independent entities. But they have to then, Kaiser itself is the only entity that gets that deferential review once it comes to court. And that is my point. The second... The thing I don't understand. Okay. So your argument, you just alluded to it, is that this plan isn't discretionary. I'm thinking about a body now, what it requires. And the first thing we have to look at is whether the plan is discretionary or not discretionary. What's your argument that it's not discretionary? My argument that it's not discretionary is that the language is in the agreement, which is not a plan document. So why is it not a plan document? Because the evidence of coverage is a stand-alone plan document. It qualifies and satisfies all the requirements of a plan under ERISA. This Court has said that when you are trying to demonstrate that another document is a plan document and you already have a plan document, the standards are pretty high. If you look at the agreement, it doesn't have, it doesn't talk about what the health benefits are. Okay. It says group agreement for EDIC. What's EDIC? It's the employer. Okay. So it's the group agreement between the employer and Kaiser. Correct. And is there, so that's where the discretionary language appears? Correct. Okay. That's where it says health plan is named, is a named fiduciary to review claims under the agreement. Group delegates to health plan the discretion to determine whether a member is entitled to benefits under the agreement. That's what you're talking about? Right. So, see, I don't understand why that doesn't make this a discretionary plan. If the agreement between the group and the employer provides for delegation and discretion in the plan, I just don't see why that doesn't suffice. Is it because it was never given to the delegates? No. I think the discretion was given by the employer to Kaiser in a separate agreement. My point is that under Ninth Circuit authority, that discretion has to be given in a plan document, and I don't believe the agreement is a plan document. I think it's the agreement between the employer and Kaiser saying, we're going to use you to provide health coverage for our employees. We choose you rather than Blue Cross, and you're going to issue a health plan for our employees. And then they go ahead and issue that health plan, which is the evidence of coverage. And that, in fact, is the plan, the official ERISA plan. Okay. So is there any language in the plan document itself that alludes to discretionary determinations as opposed to nondiscretionary? Yes. Where is that? There is a paragraph in the plan. What ER number is that? Sorry. Is that 539? It is at... Sorry. It's at 309. 309. Which is also 539. Sorry. It's AR 539, ER 309. Okay. And our point there is that what this does is identify Kaiser as the fiduciary and the decision maker. It doesn't give Kaiser discretion. Assuming that they do have discretion, what I was interested in were two things. One was that a social worker was making the arrangements or not of referral. And what the mother and this lady wanted was inpatient treatment for bulimia. And Kaiser did not have that inpatient treatment in the setup in this plan, although, as I understand it, they could make a referral out. And what bothers me is that the plan itself of Kaiser was not to send something out. And when it was to send something out, they didn't have the proper people to determine this lady's really severe symptoms. And when you address that... Yes, Your Honor. And that was my second point on the de novo standard of review. But, I mean, you don't have to get to de novo. I mean, under a body, you know, you look at this and you say, okay, so it is discretion. There's an inherent conflict of interest. So because of that inherent conflict of interest, how much scrutiny are we going to give this? Okay. So this is what Judge Bright raised is pretty critical in determining the level of scrutiny that we're going to examine this with. And my response... Let me explain the issue to you as I see it. They're pretty close, aren't they? The de novo and... They can be. They can be very close. Yeah. Yeah. They can be. There is... You can even apply so much scrutiny that you're almost at de novo, I assume. Did you ever read the panel decision in Abate? Yes. Many times. Panel decision. The panel. The underlining panel decision, yes. Underlining panel. Do you mean the en banc panel? What? The en banc panel or the... No, the first decision. That was my opinion, wasn't it? And there's an Abate there with two Ts, isn't there? Yeah. I don't know. A-B-A-T-I. T-I. That was a doctor, and then he had a doctor with two Ts. I missed that. Why don't you respond to Judge Bright? I will. Because I didn't mean to interrupt. I will. When Laura Jacobs first came to be treated for bulimia, it was January of 2003. The only thing that... There was really nothing to offer her to treat her eating disorder. There was a drop-in Tuesday night program. It was sporadic. There was no outpatient treatment. And she was getting progressively worse. She was doing whatever they were telling her to do. She was going to a therapist. She was going to a psychiatrist. She was trying this outpatient treatment. And they sent her to this social worker who said, we're not even going to have anything more intensive until April, and that turned out to be June. So by May, she's suicidal. She's depressed. She's binging and purging four times a day. And the family asked for inpatient treatment. Now, what they did not know was that two years earlier, Kaiser had determined that inpatient eating disorder treatment was not warranted for any patient with an eating disorder. They weren't going to offer it to Kaiser, and they weren't going to pay for it if you needed a referral out. And the way we know this is that Lee Miller testified to that, that she was brought on to put the program together, and they had done the research, and they were not going to offer or pay for inpatient treatment. By the way, this was completely contrary to their own research from the National Eating Disorders Association, which specifically says that inpatient treating disorder programs are incredibly effective in the standard of care for treating eating disorders. So at the time when Kaiser told Laura and Karin Jacobs, we have treatment for you, they didn't have treatment for her. They had nothing for her. And so she went and got the treatment that she needed at the Rader Institute, and the interesting part about this is that what Kaiser had done was predetermine the medical necessity issue for all eating disorder patients before Laura Jacobs ever arrived for treatment at Kaiser. And no matter what standard of review you apply to that, whether it's de novo or almost de novo or a lot of discretion, that just can't be right. If you're right on your position, at least not the first one, but at least it's a heightened scrutiny because of the inherent conflict between Kaiser not offering an inpatient treatment and not having it available so that there's a heightened standard of review. What do you want us to do with that position? What do we do, remand it? Well, I suppose the reason I say... Is there a way that we can outrightly reverse it that you know? I think you can reverse it if, number one, it's a de novo standard of review because if it's not de novo... Well, do we have the entire record in front of us? Yes. We have the entire administrative record of disorder? I believe you do between our excerpts of record and Kaiser's excerpts of record. You have the whole administrative record. Yes. And if this is a question of law, that they couldn't have denied her any treatment at all, and in fact they had no treatment for her, and had she continued going to Kaiser, for all we know she could have died, I don't know. Why couldn't we just grant summary judgment the other way? You can because we did move for summary judgment on that grounds. We did cross summary judgment. Yes. And the standards have changed, but if you can apply the ABADE, the body standard in the first instance here on a record that's complete, then you can enter judgment in our favor. How long ago was this case filed? 2004. The appeal was 2004. I couldn't hear that. The appeal was 2004. Pardon? Our appeal was filed in 2004. No, but when did you file in the district court? 2003. No. No, we filed in December 2003 in the district court. So we're approaching four years. The appeal was filed in December 2004. How is your client today? She's coping. In fact, Karin Jacobs is in the courtroom today, her mother, and I'm pleased to say that she's doing well, and the tools that she learned at Rader have served her well. She uses them to this day, and it's an insidious disease that doesn't leave, but she's determined. She's working and going to college. What's involved in this case financially? Is it the $60,000 in attorney's fees or any more? It's about $41,000 plus attorney's fees. $41,000 for the Rader treatment plus attorney's fees. I can't understand why it hasn't been settled. I can't answer that question, Your Honor. I'm sure there's a lot more attorney's fees for Kaiser than they want that's an issue. Perhaps they could address that. I'm going to reserve the rest of my time unless there are other questions. Okay. Thank you. Good afternoon. My name is Casey Yim, and I represent the Kaiser Foundation Health Plan. First of all, I think there's some clarification that is in order based on what we heard just previously. First of all, Kaiser did have a bulimia treatment plan, and that treatment plan included both outpatient treatment, partial hospitalization treatment, and inpatient treatment, if that's what the patient needed. Now, just a moment. It seems to me that this record is pretty clear that what this patient needed was inpatient treatment, and it was very serious. And that's why the mother got it for her. And it also seems to me, maybe I'm wrong on this, but from reading the brief, it looked to me like Kaiser was limiting the possibility of inpatient treatment from the beginning. You'd have to go through these various steps, and this lady could have been dead by the time she got the inpatient treatment. Not true, Your Honor. First of all, in the record, there is a medical report from Dennis Cook, M.D., who's a psychiatrist with a medical group, an independent and separate entity from the health plan. Yeah, but he's part of Kaiser, isn't he? He's not part of Kaiser, sir. He is with the Southern California Permanente Medical Group. Well, that's part of Kaiser. It's not part of Kaiser. It's called the Southern California Permanente Medical Group. Is it related to Kaiser? It is a partnership that is comprised of physicians, just like the Permanente Medical Group in Northern California. The connection that the medical group has with Kaiser is entirely contractual. There is a contract between Kaiser. Okay. Is that, in fact, he said, your treatment, in effect, plan is okay, but if she needs something more, it could be inpatient hospitalization. Did he say something like that? Absolutely. It says the M.D. order of concern was suicidally, depression, and bulimia. Given the benefit of the doubt that these symptoms required acute psychiatric hospitalization, Kaiser could have provided that level of care. That's the medical report. That's correct. He said they could have. Well, that was all that was there if you took the patient's side of it. They could have, but then they didn't. So it seems to me you're on the horns of a dilemma. No, sir. And the reason is because when the patient called in prior to her unilateral self-admission to the Rader Institute, and that was about two or three days before the admission, she called in and she spoke, one, with the social worker, and two, with the social worker's supervisor. The patient was supposed to see her treating psychiatrist on April 30th, just two days or so before this telephone call with the social worker and the social worker's supervisor. In that telephone conversation, both the social worker and the supervisor offered to make the patient a same-day appointment to come in and see the practitioners, the doctors, the social workers, whoever would be needed to evaluate her case. Number two, the social worker's supervisor, Mrs. Morrison, told the patient's mother that in order for her to get a referral to the Rader Institute, she would have to get an approval by her plan physician, by a Kaiser Permanente medical group provider, and that if she didn't get that, then it probably is not going to be covered under the health plan. Now, no decisions were being made at this point. The invitation was for the patient to come back and get a physician review. She had missed her appointment with her physician. Yeah, but look at all the months that she was waiting to be taken care of. And as I read this record, there was not any sense of urgency on the part of Kaiser Permanente. None whatsoever. You know, like trying to go pierce a bureaucracy over there. And she, when I read the record, she was severely ill. Didn't Kaiser have the duty to go out and say, well, let's find her, let's bring her in, let's do something about this? Well, they scheduled her for an appointment with a psychiatrist on April the 4th. Well, that's months later. No, that's a few days before she went to the Rader Institute. Well, sure, that's months after she came in with a problem. The issue is whether or not Kaiser had the opportunity to have a physician review of this. They had a lot of opportunities. If she doesn't go to the appointment. Putting this off, putting this off, running her around. No, no, no, there was no running around. They set her up to go to meetings, and she'd go there and be one other person there. I urge you to go and look at the chronology that is set forth by the social worker. It says dates.
judges: Pregerson, Wardlaw, Bright